UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BETTY SLATER,

                    Petitioner,

v.                                      Case No. 3:06-cv-844-33JRK

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.
_____

**<u>ORDER</u>**

**<u>I. Status</u>**

Petitioner Betty Slater, an inmate of the Florida penal system

proceeding *pro se*, initiated this action by filing a Petition for

Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to

28 U.S.C. § 2254 on August 16, 2006.  Petitioner challenges a 2002

state court (Putnam County, Florida) judgment of conviction for

second degree murder and first degree arson on the following

grounds: (1) Petitioner's plea was not knowingly or voluntarily

entered in violation of the Due Process Clause; (2) ineffective

_____

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Walter A. McNeil is substituted for James R. McDonough
as the proper party Respondent having custody over Petitioner.

assistance of trial counsel for (a) misadvising her about the maximum penalty she faced on the arson charge, to which she was ultimately resentenced, (b) failing to inform her of the elements of second degree murder, (c) failing to explain and discuss the effects that a battered spouse syndrome defense would have at trial and (d) failing to ensure that she had an opportunity to withdraw her plea; (3) Petitioner's resentencing is unconstitutional because she was resentenced by a different judge; (4) ineffective assistance of trial counsel at resentencing for failure to object to the substitute judge; and (5) ineffective assistance of trial counsel at resentencing for failure to file a motion to withdraw the plea and ensure that Petitioner had an opportunity to withdraw the plea.

Respondents filed a Response to Petition (Doc. #12) (hereinafter Response).  They submitted exhibits in support of their Response.[2]  Petitioner was instructed on how to properly respond.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #10).  Petitioner has filed a Reply.  See Petitioner's Reply to State's Response (Doc. #16).  This case is now ripe for review.

## II. Procedural History

On May 21, 2001, Petitioner was charged, by Amended Information, with second degree murder and first degree arson.  Ex.

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

2

D at 18, exhibit C.  On October 19, 2001, before the Honorable A.W. Nichols, Petitioner Betty Slater entered a plea of nolo contendere to the charges of second degree murder and first degree arson.  Ex. B, Transcript of the Plea Proceedings (hereinafter Plea Tr.) at 60. Judge Nichols concluded that she was alert and intelligent enough to understand the charges against her and that she could appreciate the consequences of entering a plea.  Id. at 74.  Thus, he found that her plea was entered freely, knowingly and voluntarily without undue promises or coercion and after the advice and counsel of a competent lawyer with whom she acknowledged that she was satisfied. Id. at 73, 74.

On January 29, 2002, Judge Nichols conducted a sentencing hearing, at which Petitioner Slater and several witnesses testified on her behalf.  Ex. C, Transcript of the Sentencing Hearing (hereinafter Sentencing Tr.).  The trial judge sentenced Petitioner Slater to two concurrent thirty-three (33) year sentences.  Id. at 118; Ex. A at 200-12.  Petitioner did not appeal.

On January 26, 2004, Petitioner, through counsel, filed a motion for post conviction relief, in which she raised the following claims: (1) the plea was not knowingly and voluntarily entered; (2) the plea included the illegal condition that Petitioner would receive a guideline sentence; (3)(a) Petitioner's written sentence on count two (arson) of thirty-three years is illegal because it exceeds the statutory maximum by three years,

3

(b) her sentence is "an illegal general sentence" and (c) Petitioner was ordered to pay restitution without holding the requisite hearing in accordance with Fla. Stat. § 775.089(6); (4) the trial court erred in ordering Petitioner to pay restitution without holding a restitution hearing, and trial counsel was ineffective for failing to object; (5) ineffective assistance of trial counsel for each error listed in claims (1) through (4); and (6) ineffective assistance of trial counsel for the cumulative effect of the above-listed errors.  Ex. D.

On January 28, 2004, the court summarily denied ground five as repetitive of grounds one, two, three, four and six and ordered the State to respond to the remaining grounds.  Id. at 319.  On March 4, 2004, the State responded, conceding that Petitioner was entitled to relief on ground 3(a) since the thirty-three year sentence for arson exceeded the statutory maximum for that offense. Id. at 121-27.

On March 17, 2004, the court denied grounds 3(c) and 4 and granted ground 3(a), stating in pertinent part:

> **THIS MATTER** came before the Court on the Defendant's Motion for PostConviction Relief by and through counsel seeking to withdraw her plea of nolo contendere to one count of second degree murder and one count of first degree arson.  The Defendant claims six grounds for relief, one of which [(ground five)] was previously denied by this court as repetitive. The Court ordered the State to re[sp]ond to the remaining grounds.  The Court, having reviewed the State's response and the file, now finds as follows.

4

>With respect to Ground 3-C and 4, which assert that trial counsel was ineffective in failing to object to restitution orders by the court and converted to a civil lien, the Court accepts the argument of the State that this can not be challenged in a motion for post-conviction relief.  <u>Doctor v. State</u>, 679 So.2d 76 (Fla. 4th DCA 1996).  For this reason, Grounds 3-C and 4 are denied.
>
>With respect to Ground 3-A, the Court treats the Ground as a Motion to Correct Illegal Sentence pur[su]ant to Florida Rule of Criminal Procedure, which is hereby granted.

Ex. D at 306.  The court noted that an evidentiary hearing would be conducted with respect to grounds 1, 2, 3(b) and 6 only.  <u>Id</u>. at 307.

On August 2, 2004, an evidentiary hearing was conducted, at which Petitioner was represented by counsel.  Ex. E, Transcript of the Evidentiary Hearing (hereinafter EH Tr.).  As noted by the Honorable Edward E. Hedstrom, the evidentiary hearing was limited to issues 1, 2, 3(b) and 6.  <u>Id</u>. at 414, 447, 454.  On the record, the trial judge granted the Rule 3.850 motion with respect to ground 3(a) and denied the motion with regard to ground 3(b).  <u>Id</u>. at 458.  In accordance with his ruling, Judge Hedstrom vacated the sentences imposed on January 29, 2002, and imposed the following sentences: thirty-three (33) years of imprisonment for count one and thirty (30) years of imprisonment for count two, to run concurrently to count one.  <u>Id</u>. at 459.  On August 6, 2004, Judge Hedstrom, in a written order, denied the remaining grounds 1, 2, 3(b) and 6.  Ex. D at 1-3.  With respect to ground 3(b), the court

specifically noted that he had announced his ruling, at the evidentiary hearing, that this ground was denied (EH Tr. at 457-58), and stated ground 3(b) "is conclusively refuted by the transcript of the sentencing proceedings, page 42 . . . where the Court separates the two offenses for sentencing purposes." Ex. D at 3.

On September 1, 2004, Petitioner, through counsel, appealed. Ex. F. Petitioner, through counsel, filed a brief, contending that the record shows appellant's plea was involuntary due to trial counsel's ineffectiveness in advising appellant concerning the plea offer; it was an abuse of discretion for the trial court to not allow appellant to withdraw her plea. Id., Initial Brief of Appellant. The State filed an Answer Brief. Id., Answer Brief of Appellee. On June 7, 2005, the appellate court per curiam affirmed without issuing a written opinion. Ex. F. Petitioner, through counsel, filed a Motion for Rehearing and/or Clarification and Motion for Certification of Questions of Great Importance (hereinafter motion for rehearing). Ex. F. In denying the motion for rehearing, the appellate court, in a written opinion, stated that defense counsel's conduct in advising Petitioner about the State's plea offer, before the psychologist finished his evaluation, was not ineffective assistance of counsel and concluded that "the record does not support Slater's claim [that] the court below erred in denying her post-conviction relief or that this

court overlooked any evidence in the record." <u>Slater v. State</u>, 915
So.2d 618 (Fla. 5th DCA 2005); Ex. F.  The mandate was issued on
August 31, 2005.

On or about December 2, 2005, Petitioner filed a *pro se* second
motion for post conviction relief, in which she raised the
following claims: (1) the judge who initially sentenced her should
have conducted the resentencing; (2) counsel was ineffective in
failing to object to the resentencing; and (3) counsel was
ineffective for failing to move to withdraw the plea. Ex. G.  On
December 21, 2005, the court denied the Rule 3.850 motion. <u>Id</u>.  On
appeal, Petitioner filed an Initial Brief; the State responded; and
Petitioner filed a Reply Brief.  Ex. H.  On May 23, 2006, the
appellate court per curiam affirmed without issuing a written
opinion.  <u>Slater v. State</u>, 933 So.2d 539 (Fla. 5th DCA 2006).
Petitioner's motion for rehearing was denied on July 11, 2006.  Ex.
H.  The mandate was issued on July 28, 2006. <u>See</u> Response at 8.

Petitioner's Petition (signed August 11, 2006, and filed
August 16, 2006) is timely filed within the one-year period of
limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 7-8.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable an
applicant to prove the petition's factual allegations, which, if
true, would entitle the applicant to federal habeas relief."

<u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1940 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. The pertinent facts of the case are fully developed in the record before the Court. <u>Smith v. Singletary</u>, 170 F.3d 1051, 1054 (11th Cir. 1999). Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000). Under AEDPA,

however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[3] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'

---

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

§2254(e)(1)."  Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).  The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

10

The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit recently stated:

The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of Strickland. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that

11

is, the defendant must overcome the
presumption that, under the circumstances, the
challenged action might be considered sound
trial strategy." Strickland, 466 U.S. at 689,
104 S.Ct. at 2065 (quotation omitted). As a
result of this presumption, a petitioner must
show "that no competent counsel would have
taken the action that his counsel did take."
Chandler v. United States, 218 F.3d 1305, 1315
(11th Cir. 2000) (en banc). Thus, "where the
record is incomplete or unclear about
[counsel]'s actions, we will presume that he
did what he should have done, and that he
exercised reasonable professional judgment."
Id. at 1314 n. 15 (quoting Williams v. Head,
185 F.3d 1223, 1228 (11th Cir. 1999)).
Moreover, because the standard is an objective
one, trial counsel's admission that his
performance was deficient "matters little."
Id. at 1315 n.16. We must also avoid "the
distorting effects of hindsight" and evaluate
the reasonableness of counsel's performance
from the perspective of counsel at the time
the acts or omissions were made. Strickland,
466 U.S. at 689, 104 S.Ct. at 2065.

Jennings v. McDonough, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (footnote
omitted), the Court held:

that the two-part Strickland v. Washington
test applies to challenges to guilty pleas
based on ineffective assistance of counsel.
In the context of guilty pleas, the first half
of the Strickland v. Washington test is
nothing more than a restatement of the
standard of attorney competence already set
forth in Tollett v. Henderson, supra, and
McMann v. Richardson, supra. The second, or
"prejudice," requirement, on the other hand,
focuses on whether counsel's constitutionally
ineffective performance affected the outcome
of the plea process. In other words, in order
to satisfy the "prejudice" requirement, the
defendant must show that there is a reasonable
probability that, but for counsel's errors, he

12

would not have pleaded guilty and would have
insisted on going to trial.

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Two

As grounds one and two, Petitioner claims her plea was not
knowingly or voluntarily entered in violation of the Due Process
Clause (ground one) and that counsel was ineffective (ground two)
for (a) misadvising her about the maximum penalty she faced on the
arson charge, to which she was ultimately resentenced, (b) failing
to inform her of the elements of second degree murder, (c) failing
to explain and discuss the effects that a battered spouse syndrome
defense would have at trial and (d) failing to ensure that she had
an opportunity to withdraw her plea.  These grounds were raised in
her first Rule 3.850 motion as grounds 1, 2, 3(b) and 6.  On August
2, 2004, an evidentiary hearing was conducted on these grounds.  EH
Tr. at 414.  After the evidentiary hearing at which both Petitioner
Slater and defense counsel (Edwin Richard Tilton) testified, the
postconviction court adjudicated these grounds on the merits,
stating in pertinent part:

> Ground One - Defendant's plea was Involuntary.
>
> In Ground One, the Defendant claims that
> her plea was not voluntary because trial
> counsel "misled" her concerning the benefit of
> the plea offer.  The Defendant argues that
> trial counsel failed to explain to her the
> elements of second degree murder that the
> State would be required to prove.

At the evidentiary hearing on this matter, the Defendant and trial counsel for the Defendant testified that she accepted the plea offer to avoid the state pursuing an indictment for first degree murder and seeking the death penalty. Although it is true that the State, trial counsel and the Court were mistaken as to the maximum punishment for count II, that matter has been resolved by the Court by granting relief on Ground 3-A. See Appendix B.

Also in ground one, the Defendant testified that she believed she would receive a twenty-three year sentence in exchange [for] her plea. This is conclusively refuted by the record. See Transcript of Plea, pages 4-17 attached as Appendix C; State evidentiary hearing exhibit 1, attached as Appendix D.

Also in ground one, the Defendant claims that trial counsel was ineffective for failing to inform the Defendant of the [defense] of Battered Spouse Syndrome. This matter was refuted at the hearing on this matter. Trial counsel testified that he did inform the Defendant of the defense of Battered Spouse Syndrome, filed a notice of intent to seek the defense, (attached as Appendix E), and received a mental health evaluation in preparation for this defense. Order appointing expert attached as Appendix F.

Also in ground one, the Defendant claims ineffective assistance for failing to present mitigating evidence at sentencing. This is refuted by the record. See transcript of Sentencing, attached as Appendix G.

Ground Two - Plea included the illegal condition of a "guideline sentence."

In Ground Two, the Defendant argues that the plea offer for the State, and the offer ultimately accepted by the Defendant, was illegal because it contained the illegal provision of a "guideline" sentence. The Defendant committed the offense in April of

2001, so she was subject to the Criminal Punishment Code, not the Guidelines in effect from 1983 to October 1, 1998. Although the State used the term "guideline sentence," the court, hearing testimony at the evidentiary hearing, finds that this term referred to the lowest permissible sentence under the code to the maximum sentence of life imprisonment. This is supported by the plea hearing transcript where the Court advises the Defendant that she could receive a sentence up to life in prison.

. . . .

Ground Six - Cumulative errors by trial counsel.

In ground six, the Defendant claims that the cumulative errors of trial counsel claimed throughout the Motion for Postconviction relief amount to ineffective assistance of counsel. As the court fails to find any errors on the other grounds of the motion, ground six is likewise denied.

Ex. D at 1-3.

The appellate court per curiam affirmed without issuing a written opinion. Ex. F. Thereafter, in denying Petitioner's motion for rehearing, the appellate court adjudicated the claims on the merits, stating in pertinent part:

Slater has filed a motion for rehearing and/or clarification and certification of questions of great public importance, FN1 after this court *per curiam* affirmed the trial court's order denying her motion for post-conviction relief. Slater entered no contest pleas to second-degree murder and first degree arson and was sentenced to concurrent 33 year sentences. We deny the motion but write to explain our reasons for doing so.

15

FN1. The four questions set forth in Slater's motion as being ones of great importance within the meaning of Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v), follow: 1) When trial counsel files [a] notice of intent to seek a defense of Battered Wife Syndrome, the court appointing a psychologist to evaluate the defendant towards this end, is counsel ineffective in advising that defendant as to her chances at trial so that she can make a voluntary and knowing decision as to whether to accept or reject a plea offer from the State where in return for her plea of guilty to all charges she would receive a "guidelines sentence" under the Criminal Punishment Code, when such is done before the psychologist has finished his evaluation and submitted his report? 2) Is a plea voluntary and knowingly made when a defendant faces a statutory maximum of 30 years on a charge, but the State, defense counsel, and trial court all mistakenly advise the defendant that she faces life in prison on that charge? 3) When the State offers a plea offer where a defendant pleads guilty to all counts as charged with the sole "benefit" offered by the State being that she would receive a "guidelines sentence," this being under the Criminal Punishment Code, is this "benefit" in reality a penalty in that it precludes that defendant from receiving a downward departure sentence, an option that would be available if found guilty on all counts as charged at trial? 4) Can a claim that counsel misadvised a defendant as to accepting a plea which in fact had no benefit over going to trial, be overcome by a claim by the State

that the benefit the defendant
received was that it could have
charged that defendant with [a]
crime with a greater penalty when
such a scenario was not a
consideration when defendant made
her decision to accept the plea.

In her motion for post-conviction relief
and in this motion, Slater argues her defense
counsel, Ed Tilton, was ineffective for not
fully advising her on the defense of Battered
Wife Syndrome. Slater points out that she was
examined by Dr. Legum, a psychologist,
pursuant to a court-ordered evaluation
sometime in January 2002. However, Slater
claims Tilton had already advised her to
accept a plea from the state and she in fact
entered that plea in October 2001, *before* Dr.
Legum completed his report. Without Dr.
Legum's findings, Slater argues it was
impossible for Tilton to have knowingly
advised her as to what defenses were available
to her at trial.

Slater's argument suggests Tilton was
unaware of the defense of Battered Wife
Syndrome or did not believe it would apply
*until* Dr. Legum submitted his report. This was
not the case. Slater was arraigned on June 13,
2001. Tilton filed a notice of intent to rely
on the Battered Spouse Syndrome defense on
July 2, 2001. Thus he clearly considered it a
potentially viable defense.

However, Tilton's primary motivation was
to avoid the state seeking an indictment
against Slater for first degree murder for the
death of William Kimberly, a friend who was
staying with the Slaters in their mobile home.
Slater set the mobile home on fire and
Kimberly, who was blind, died as a result.
According to the fire and arson investigation,
Slater confessed that she poured gasoline on a
pile of clothes and set them on fire with a
cigarette lighter. By the time she realized
what she had done, the fire was out of
control. Slater told deputies she was the

17

cause of Kimberly's death but that she did not mean to kill him.

The prosecutor sent Tilton a letter on August 10, 2001[,] which outlined his plea offer:

> As I have previously relayed to the Office of the Public Defender, in this case, I will offer to let Ms. Slater plead as charged and agree to a guideline sentence. No recommendation will be made other than the sentence be within the guidelines. Of course, the victim's family will be allowed to speak to the judge and recommend an appropriate sentence. This offer has been approved by the victim's family.

> She will also waive any right to a bond pending sentencing.

> This offer will expire after Pre-Trial on August 30, 2001. Otherwise, we will take this case before a grand jury and seek an Indictment for First Degree Felony Murder and First Degree Arson.

Slater entered her no contest pleas in October 2001. By the January 29, 2002 sentencing hearing, Dr. Legum had submitted his report and the judge had read that report. Tilton went over Dr. Legum's report with Slater and had Slater testify as to the abuse she suffered over the years from her husband Adam. On the day of the fire, Slater said Adam was complaining she had too many clothes and she was going to burn them in the trailer. Slater admitted she did not know what she intended to do by burning her clothes. Slater denied she told a neighbor that she thought Adam was inside the house when she set it on fire.

Tilton also had Slater's father, sister and daughter testify to Adam's abuse of

Slater. Tilton asked for the minimum sentence, arguing Slater was basically a good person who suffered years of abuse, as noted in Dr. Legum's report.

Dr. Legum's report outlined Slater's history of alcohol use and abusive relationships, which included her two prior marriages. Dr. Legum also administered a psychological test battery, consisting of eight tests. As to Battered Spouse Syndrome, Dr. Legum concluded as follows:

> The defendant's account of her own life and her chaotic, turbulent relationship with her present husband constitutes a pattern which is often seen among persons who have been identified with the "Battered Woman Syndrome." In this context, there are numerous overlapping indicants from this evaluation which suggests [sic] that the defendant insidiously developed what is referred in the psychological literature as "a learned helplessness syndrome," i.e., a pervasive sense of her own inadequacy and incompetency and more critically her inability to rely upon the efficacy of her own behaviors. In this context, the Learned Helplessness model lends some insight into the paradoxical finding that so many battered women choose to remain with their violent spouses in spite of what may be many years of mistreatment, degradation, and overt violence, i.e., staying with the abusive husband, however unappealing, is a safer proposition than facing the unknown. Consistent with this dynamic, the defendant indicates that during the years in which she was physically abused by her first husband, that she would turn to her alcoholic mother for solace rather than contacting the

legal authorities and that this marriage ended through the initiative of her first husband. In more recent years of her present marriage, Ms. Slater indicates she was able to report her spouse's abuse to the authorities but at the critical moment would find herself not being able to follow through in filing criminal charges against him. The pathological admixture of her profound ambivalence about her husband and the marriage, in conjunction with her pervasive insecurities and self-doubt, is tellingly and poignantly reflected in the curiously dismaying disjunction of her efforts to characterize her husband as a caring and kind man while spinning off a litany of indignities, perversities, and violence meted out by him as delineated above. *In the opinion of this psychologist, the defendant cannot be considered to meet the criteria for the Battered Woman Syndrome defense because of her self-admitted state of intoxication during the critical period of time surrounding the events which led to her actions. While the defendant is seen as manifesting many of the classic symptoms of Battered Woman Syndrome, nevertheless, the disinhibitory influence of alcohol is thought to diminish the viability and credibility of the application of this syndrome to her case, i.e., her reckless, ill-conceived actions are seen as emanating from a fusion of her state of intoxication, her profound personality deficiencies, and her cumulative response of rage to the indignities and abuse forced upon her by her spouse . . .* (emphasis added)

At the post-conviction hearing, Tilton testified he felt Dr. Legum's report weakened the defense of Battered Spouse Syndrome.[4] Tilton also testified he "wasn't confident that the jury would buy it, and basically [the prosecutor] had us in a position where you take this or it's felony first degree murder, which is life without parole."[5]

Thus the record clearly shows that Tilton was aware of the Battered Spouse Syndrome defense but did not think the jury would accept it and that his primary concern was to avoid a possible first degree murder charge.FN2 Apparently a decision had to be made concerning the state's plea offer within a specific time frame which was before the psychologist finished his evaluation. The evidence against Slater was substantial - she confessed to deputies at the scene, her clothes were taken into evidence, and she may have made a comment to a neighbor which indicated she knew someone was in the house.[6] In addition, the victim was *not* [Slater's] allegedly abusive husband but was a friend and innocent victim who had never harmed Slater, thus rendering the defense of Battered Spouse Syndrome problematical at best.FN3 In these circumstances, advising Slater about the state's plea offer cannot be deemed ineffective assistance of counsel simply because that advice came before the psychologist finished his evaluation.

FN2. Slater admitted Tilton planned to use the Battered Spouse Syndrome as a basis to seek clemency.

FN3. Slater admitted Kimberly had never done anything to her and in fact was a really nice man.

---

[4] See EH Tr. at 437-38.

[5] See EH Tr. at 438.

[6] See EH Tr. at 437-39.

21

As it turns out, the psychologist concluded Slater did not meet the criteria for the Battered Woman Syndrome defense because of her self-admitted state of intoxication. Slater complains that Tilton never made any attempt to determine whether she was in fact intoxicated and, if so, to what degree. However, Slater admits she told Dr. Legum she was intoxicated at the time of the incident and she told deputies who were investigating the incident that she had been drinking beer throughout the evening.

. . . .

Slater next claims she understood she would receive a 23 year sentence if she entered a plea and not the 33 year sentence she actually received. The court below found this claim was conclusively refuted by the record and the evidence supports that determination. At the plea hearing, the judge specifically asked Slater if she understood that any recommendation for a guidelines sentence was just that - a recommendation - and that any sentence - higher or lower - would be up to him.[7] Slater responded that she understood.

Slater also points out her 33-year sentence for arson was illegal, the maximum being 30 years. The court below granted Slater relief on this claim and corrected the excessive sentence on the arson charge by resentencing her to 30 years.

Slater next claims the record contradicts Tilton's claim he met with her numerous times. At the post-conviction hearing, Slater testified she only met with Tilton one time at [the] county jail and a couple of times at the courthouse. In contrast, Tilton testified he spoke to or met with Slater 10 or 15 times, including four times for "concentrated"

_____

[7] See Plea Tr. at 72-73; EH Tr. at 436.

interviews.[8] Slater did not raise any alleged
failure of Tilton to devote enough time to her
case and so the court did not resolve this
conflict in the evidence.

          In sum, the record does not support
Slater's claim the court below erred in
denying her post-conviction relief or that
this court overlooked any evidence in the
record. The questions Slater proposes for us
to certify do not involve issues of great
public importance but rather assume facts not
in evidence or misstate the facts in this
particular case. In another case, any of the
issues in these questions may support a claim
of    ineffective   assistance   of   counsel.
Unfortunately for Slater, she was unable to
establish ineffective assistance in her case.

Slater, 915 So.2d at 618-22.

     Accordingly, as reflected in the written opinions, these
grounds were rejected on the merits by the state trial and
appellate courts.   Thus, there are qualifying state court
decisions.   These grounds should be addressed applying the
deferential standard for federal court review of state court
adjudications, as required by AEDPA.  Upon a thorough review of the
record and the applicable law, it is clear that Petitioner is not
entitled to relief on the basis of these claims because the state
courts' adjudications of the claims were not contrary to clearly
established federal law, did not involve an unreasonable
application of clearly established federal law, and were not based

_____

     [8] See EH Tr. at 432-33.

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds these grounds to be without merit. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing Mr. Tilton's testimony over that of Petitioner Slater. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, it is clear that Petitioner's claims are wholly unsupported and therefore, the claims must fail.

Further, in evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that Mr. Tilton's performance was reasonable is even stronger since the record reflects that he is an experienced criminal defense attorney.[9] See EH Tr. at 431-32. The

---

[9] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001). At the evidentiary hearing, Mr. Tilton testified that he had been an attorney for fourteen (14) years, specializing in criminal law and violent homicides. EH Tr. at 432; see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense

inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

The trial judge informed Petitioner that, while the recommendation was a guideline sentence, she faced a term of imprisonment, "not exceeding life in prison." Plea Tr. at 72. He noted that she "could be sentenced to a lesser term than that." Id. But, he concluded that "any sentence you receive is going to be up to the judge." Id. at 72-73. She affirmed that she understood, and she confirmed that she was satisfied with the representation of Mr. Tilton and also with the plea. Id. at 73. Furthermore, the trial court conducted an adequate inquiry during the plea colloquy; the prosecutor set forth the factual basis for the plea; and the trial judge thereafter found the plea to be freely, knowingly and voluntarily made without undue promises or coercion and after the advice of a competent lawyer, with whom she

---

attorney), cert. denied, 530 U.S. 1246 (2000).

was satisfied. _Id_. at 70-74.  Thus, he accepted her plea.  _Id_. at 74.

Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Here, based upon the record before this Court, Petitioner has not overcome this barrier.

Even assuming _arguendo_ that counsel's performance was deficient, Petitioner has not shown prejudice.  As noted by the state and appellate courts, she accepted the plea offer to avoid a possible first degree murder charge.  And, even if Petitioner had proceeded to a jury trial on only second degree murder and was found guilty by the jury, she faced life imprisonment. Accordingly, Petitioner has not shown that she was prejudiced by counsel's actions or inactions.  Thus, the ineffectiveness claim must fail.

## B. Grounds Three, Four and Five

Petitioner claims her resentencing on count two (first degree arson) is unconstitutional because she was resentenced by a different judge (ground three); counsel (David Collins) was ineffective at the resentencing for failing to object to the

26

different judge (ground four) and for failing to file a motion to withdraw the plea (ground five).   The record reflects that Petitioner Slater was initially sentenced by Judge Nichols on January 29, 2002.   <u>See</u> Sentencing Tr. (Ex. C); Ex. A at 200-12. Thereafter, Judge Hedstrom vacated the sentences imposed on January 29, 2002, and imposed the following sentences: thirty-three (33) years of imprisonment for count one and thirty (30) years of imprisonment for count two, to run concurrently to count one.   EH Tr. at 459; Ex. A at 383-95.

Petitioner, proceeding *pro se*, raised these grounds in her second Rule 3.850 motion.   In adjudicating the claims on the merits, the court stated:

> First, the Defendant claims that her re-sentencing was imposed in an unconstitutional manner citing Fla. R. Crim. P. Rule 3.700 claiming that she was not re-sentenced by the original Judge and that the re-sentencing Judge did not become acquainted with the facts and make an independent evaluation of the underlying case.   However, the re-sentencing was brought about based on a Postconviction motion which would rightfully be addressed by the sitting Judge in the division at the time that the motion was filed.   In this case, that would be Judge Edward E. Hedstrom. Additionally, a review of the Court file shows that the Defendant's claim that [the] Re-sentencing Judge was not acquainted with the case is at best conclusory and has no merit.

> Second, the Defendant claims that Collateral Counsel provided ineffective assistance by failing to object to the Re-sentencing Judge.   This ground has no merit based on the reason above.

Last, the Defendant asserts that Collateral Counsel was ineffective at re-sentencing for failing to file a motion to withdraw her plea and ensuring that the Defendant has an opportunity to withdraw the plea. Here however, a review of the Postconviction motion filed by Collateral Counsel shows that relief asked for included a request that the Defendant be given a[n] opportunity to withdrawn [sic] her original plea. (See Appendix A, Excerpts from motion filed). Although, the Defendant's sentence for the first degree arson was corrected from 33 - years to 30 - years, there was nothing in the record, that shows that the Defendant accepted the plea because of any overt misunderstanding. More specifically, the original sentencing Judge (Judge Nichols) explained to the Defendant that any sentence that she received was up to the Court and the Defendant replied that she understood. (See Appendix B, Plea Proceedings October 19, 2001). A point addressed by the Fifth District Court of Appeal. (See Case # 5D04-3031, Opinion filed on Motion for Rehearing and/or Clarification and Motion for Certification of Questions of Great Public Importance).

Ex. G at 1-2. The appellate court per curiam affirmed without issuing a written opinion. Slater, 933 So.2d 539.

Accordingly, these claims were rejected on the merits by the state trial and appellate courts. Thus, these grounds should be addressed applying the deferential standard for federal court review of state court adjudications. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of these claims because the state courts' adjudications of the claims were not contrary to clearly established federal law, did not involve an unreasonable

28

application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 28th day of April, 2008.

sc 4/24
c:
Betty Slater
Ass't Attorney General (Morris)

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE